IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | § |
| | §    Case No. 22-70234-AST |
|     Benjamin Futernick Dynkin, | § |
| | §    Chapter 7 |
|                   Debtor. | § |

**DECISION AND ORDER DENYING MOTION TO EXTEND TIME TO FILE
DISCHARGE AND DISCHARGEABILTY COMPLAINTS**

*Issues before the Court*

The issue before the Court in this chapter 7 bankruptcy case is whether certain pre-petition creditors, 18 Blackbears, LLC ("18Blackbears") and Ben-Zio Alcalay (together, the "Creditors"), have established cause to further extend their time to file a complaint for an exception to discharge under § 523 and/or a complaint for denial of the discharge under § 727 of title 11 of the United States Code (the "Bankruptcy Code"[1]). Creditors have been engaged in a years-long dispute with Debtor. The details of the dispute are contained in a state court complaint filed in 2020 in Nassau County, New York by 18Blackbears against Debtor and two entities affiliated with Debtor, seeking dissolution of a business entity.[2] For the reasons to follow, the Court finds and determines that Creditors failed to meet their burden to establish cause to further extend the § 523 or § 727 deadline.

---

[1] Hereinafter, any reference to "section[s]" or "§[§]" shall be to the cited section(s) of the Bankruptcy Code, unless otherwise noted.

[2] This is a dispute amongst family members that arose following a failed joint business venture. The situation is summarized as follows: Ben Zion Alcalay, one of the Creditors, and his brother allegedly invested $500,000 for a 50% position in the cyber security business of Debtor and Debtor's brother. The Alcalay brothers and the Dynkin brothers are cousins. To facilitate the ownership of the business, the Alcalay brothers formed 18Blackbears and the Dynkin brothers formed an entity called BENBAR, LLC ("BENBAR"). In turn, 18 Blackbears and BENBAR formed DACS Cybersecurity Holdings, LLC ("DACS"), a holding company that owned and controlled the cybersecurity business. Following the alleged failure of the DACS business, 18Blackbears and Ben Zion Alcalay sued the Dynkins, claiming gross mismanagement of the business as well as fraud and misrepresentation (the "State Court Action").

1

*Facts and background*

On February 14, 2022, Debtor, through counsel, filed a petition for relief under chapter 7 of title 11 of the United States Code (the "Bankruptcy Code"), thereby initiating this Case.[3] Also on that date, the Court set May 9 as the last day by which a complaint for a determination of exception to discharge under § 523 or a complaint for a denial of the discharge under § 727 could be filed. After Debtor agreed to a three-plus month extension of time to file a complaint, Creditors sought a further extension of time. On August 18, four days before the agreed August 22 extended deadline would expire, Creditors filed their Second Motion to Extend the Deadline for Filing a Complaint (the "Second Motion") [dkt item 52]. On September 6, Debtor opposed this request [dkt item 54]. The matter was argued on September 13.

On September 14, Creditors filed a 22 page complaint asserting claims under § 523(a)(2), (a)(4) and § 727(a)(4) . That complaint will be untimely if the Second Motion is denied. Debtor filed a Supplemental Objection [dkt item 58] on September 27.

Because this dispute requires a review of what actions Creditors have taken to obtain information they alleged they might need to file a complaint under § 523 or § 727, and how, if at all, Debtor interfered in those efforts, at the direction of the Court, the parties have agreed to a timeline of post-petition events filed at dkt item 57. The most salient of these events, all of which occurred in 2022, are set out below:

- March 7 - Creditors' attorney filed a Notice of Appearance.

- March 9 - 341 meeting held- Gary Fischoff, Esq. appeared on behalf of Creditors at examination of Debtor.

- March 9 - Debtor's amended schedules and statement of financial affairs filed.

---

[3] The Case was originally designated as a so-called "no asset" case but was later re-designated as an asset case on July 18, 2022, after the case trustee reported the discovery of assets.

- March 29 - Creditors' receipt of financial statements of Debtor's various businesses as requested at 341 meeting.

- March 29 - Creditors filed ex parte motion for examinations of Semyon Dynkin and Barry Dynkin under Federal Rule of Bankruptcy Procedure (each, a "Rule"; collectively, the "Bankruptcy Rules") 2004.

- April 4 - Order entered granting Rule 2004 examinations of Semyon Dynkin and Barry Dynkin.

- April 6 - Creditors served subpoenas on Barry Dynkin and Semyon Dynkin.

- April 13 - Telephone conference between Gary Fischoff and Marc Pergament, Debtor and witness counsel, to discuss discovery demands in the Rule 2004 Subpoenas.

- April 14 - Creditors filed a motion to extend §523 and §727 deadlines.

- April 18 - Motion to quash filed by Semyon Dynkin and Barry Dynkin.

- April 27 - Debtor's document production to Trustee.

- May 6 - Email between Creditors' and witnesses' counsel with Trustee to schedule a meeting as directed by Court to resolve discovery issues.

- May 20 to June 6 - Numerous emails (approximately ten) between all parties and Trustee to schedule discovery conference.

- June 8 - Telephone conference between Creditors' and witnesses' counsel to resolve discovery issues.

- July 19 - Notice of stipulation resolving motion to quash and extension motion.

- August 3 - parties agree to move Semyon Dynkin examination from August 12 to August 17 and Barry Dynkin examination from August 12 to August 17.

- August 5 - Creditors receive documents from Barry Dynkin responsive to the Rule 2004 Subpoena.

- August 5 - Creditors receive documents from Semyon Dynkin responsive to the Rule 2004 Subpoena.

- August 12 - Rule 2004 examination of Semyon Dynkin; transcript ordered on expedited basis.

- August 15 - Additional documents received from Semyon Dynkin pursuant to the 2004 subpoena.

- August 16 - Rule 2004 examination of Barry Dynkin conducted; transcript ordered on expedited basis.

- August 18 - Creditors filed motion to further extend time to object to discharge.

- August 22 - Stipulated last day for Creditors to file objection to discharge and dischargeability.

- September 14 - complaint filed.

As the above chronology indicates, and as the parties agreed at the hearings, Creditors sought discovery from Semyon Dynkin and Barry Dynkin (Debtor's father and brother, respectively), but not from Debtor. The parties clearly had disputes over the scope of documents being sought from and produced by Debtor's father and brother but resolved those to a great extent. However, by the middle of August, Creditors were still not satisfied with the scope of the information received in response to the subpoenas and insisted that information remained outstanding. The Rule 2004 examinations of the father-and-brother deponents had been commenced on August 12 and August 16 but not concluded, instead being "held open" for another day.

Creditors now contend that the need for more information from the deponents, as well as alleged inconsistencies in the testimony of the deponents, including testimony related to asset transfers, warrant another extension of the deadline. Debtor, on the other hand, posits that this second request for an extension is essentially a rouse by Creditors to gain an advantage in another federal lawsuit, separate from this bankruptcy case. Debtor noted that father-and-son deponents sued Creditor Ben-Zion Alcalay in 2022 in the U.S. District Court for the Eastern District of New York (Case No. 22-cv-01950), and claims that Creditors are seeking to misuse

the Rule 2004 process afforded here, to obtain a litigation advantage in the federal district court case [dkt item 54].

*Legal standard*

The Bankruptcy Rules govern an extension of the deadline for filing a complaint under § 523 or § 727. Rule 4004(b)(1) governs the extension of a § 727 complaint deadline: "[o]n motion of any party in interest, after notice and hearing, the court may for cause extend the time to object to discharge. Except as provided in subdivision (b)(2) [not applicable here], the motion shall be filed before the time has expired." Rule 4007(c) governs the extension of a § 523 complaint deadline: "[e]xcept as otherwise provided in subdivision (d) [which is not applicable here], a complaint to determine the dischargeability of a debt under § 523(c) shall be filed no later than 60 days after the first date set for the meeting of creditors under § 341(a) . . . On motion of a party in interest, after hearing on notice, the court may for cause extend the time fixed under this subdivision. The motion shall be filed before the time has expired." Both Rules require a showing of cause by Creditors.[4] *In re Chatkhan*, 455 B.R. 365 (Bankr. E.D.N.Y. 2011).

Neither the Bankruptcy Code nor the Rules define "cause" for the purposes here. Case law, however, provides guidance. In general, deadlines imposed under the Rules "are to be interpreted strictly and in a manner consistent with the [Bankruptcy] Code's policies in favor of providing a fresh start for the debtor and prompt administration of the case." *In re Grillo*, 212 B.R. 744, 746 (Bankr. E.D.N.Y. 1997)(citing *Dombroff v. Greene (In re Dombroff),* 192 B.R. 615, 621 (S.D.N.Y.1996) (citing *Taylor v. Freeland & Kronz,* 938 F.2d 420 (3d Cir. 1991), *aff'd*, 503 U.S. 638, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992); *Dollinger v. Poskanzer (In re*

---

[4] The issue here is whether the Movants established cause. Debtor does not dispute that the Second Motion was timely.

*Poskanzer),* 146 B.R. 125, 132 (D.N.J.1992)). Further, the "for cause" standard applicable to requests to extend the time for file a § 727 or § 523 is more stringent than the more liberal "excusable neglect" standard. *See id*. (internal citations omitted).

As noted by former Chief Judge Craig in *In re Chatkhan*, and as this Court has followed: the following factors are considered in evaluating a request for an extension:

> (1) whether the creditor has received sufficient notice of the deadline and the information to file an objection;
> (2) the complexity of the case;
> (3) whether the creditor has exercised diligence;
> (4) whether the debtor has refused in bad faith to cooperate with the creditor; and
> (5) the possibility that proceedings pending in another forum will result in collateral estoppel of the relevant issues.

*In re Chatkhan*, 455 B.R. at 367-68 (citing *In re Bressler*, 2007 WL 98493, at *1 (Bankr. S.D.N.Y. Jan. 12, 2007); *see also In re Nowinski*, 291 B.R. 302, 305 (Bankr. S.D.N.Y. 2003) (citations omitted); *In re Kramer*, 492 B.R. 366 (Bankr. E.D.N.Y. 2013). These factors provide an analytical framework and are not exclusive. *In re Chatkhan*, 455 B.R. at 367-68; *In re Bressler*, 2007 WL 98493, at *1.

*Analysis*

The strict interpretation of the deadlines for filing a § 523 or § 727 complaint is important to the timeliness and fairness of the bankruptcy process. Unnecessary delay rarely advances the cause of justice or the purposes of the Bankruptcy Code. For that reason, creditors are expected to not sit on their hands in the face of their rights. If they do—whether by failing to timely initiate discovery, or by failing to attend the § 341 meeting, or by delaying seeking an extension until the eleventh hour—they risk being denied an extension.

Here, while Creditors actively participated in discovery efforts within the first month or so of the Case being filed, they have failed to demonstrate cause to further extend the August 22

deadline, which was more than three months after the original May 9 deadline. Creditors alleged that their ability to assess whether they could file a § 523 or § 727 complaint rested on obtaining information from the deponents, yet they had ample time and opportunity to obtain that information. Creditors took Rule 2004 examinations of Semyon Dynkin on August 12 and of Barry Dynkin on August 16. They received document production before each examination. And, importantly, even if Creditors believe that they did not obtain all the information they were entitled to, and even if they received inconsistent testimony, that does not lie on the shoulders of Debtor.

Debtor did not interfere in Creditors' efforts to obtain production of documents or with the examinations. Debtor should not have to bear additional delay and uncertainty as to his receiving a timely discharge simply because Creditors were not 100% satisfied with the information they received from the witnesses.

Moreover, Creditors insisted in mid-August that they needed more time to determine whether they could file a § 523 or § 727 complaint. Yet, long before this bankruptcy case was filed, 18Blackbears alleged in the State Court Action that Debtor had engaged in fraud and false representations in connection with the operation of the DACS business. Further, early-on in this Case, Creditors indicated to this Court that the filing of a § 523 or § 727 complaint seemed "inevitable." Finally, Creditors actually filed their lengthy complaint on September 14, with no indication of what new information they obtained between their August 22 deadline and their September 14 filing.[5]

The entire record before the Court strongly demonstrates that Creditors in fact could have timely filed their complaint by August 22, and under applicable law they should have.

---

[5] Nothing in this decision indicates the potential strength or weakness of the claims asserted in the adversary complaint.

*Conclusion*

For the reasons set forth, the Court hereby Orders that the Second Motion to Extend is denied and the Complaint filed on September 14, 2022 is deemed untimely.



Dated: December 21, 2022
Central Islip, New York

_____
Alan S. Trust
Chief United States Bankruptcy Judge